**I. T. T. SEMI-CONDUCTORS, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 24937.

United States Court of Appeals
Fifth Circuit.

May 21, 1968.

P. D. Thomson, Paul & Sams, Miami, Fla., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel; Eugene B. Granof, Atty.; Arnold Ordman, Gen. Counsel; Dominick L. Manoli, Assoc. Gen. Counsel; Paul J. Spielberg, Atty., N. L. R. B., Washington, D. C., for respondents.

Frank E. Hamilton, Jr., Tampa, Fla., amicus curiae.

Before TUTTLE and SIMPSON, Circuit Judges, and BREWSTER, District Judge.

TUTTLE, Circuit Judge:

This is a petition of I.T.T. Semi-Conductors, Inc. to review an order issued by the National Labor Relations Board on June 21, 1967, and a cross-petition by the Board for enforcement of its order. The order is reported at 165 NLRB No. 98.

The Board found that the Company violated section 8(a) (1) of the Act by means of threats, coercive interrogations, granting a wage increase during a period of organizational attempts by the employees, and the promulgation and alleged discriminatory enforcement of no solicitation and no distribution rules. Without further discussion of these findings or the evidence supporting the Board's determination as to them, we conclude that there was sufficient evidence on the record as a whole to require that we deny the petition to set aside these findings and this part of the order.

The Board also found that the company violated Section 8(a) (5) and (1) of the Act by refusing to bargain with a union which it found had been designated by a majority of its employees. This finding by the Board was based upon a determination that a majority of the employees had designated the union as its bargaining agent, notwithstanding the fact that the union lost the election by a vote of 129 to 89. This unusual result arose from the fact that, as stated in the general counsel's brief here, "the Union's claim to majority status was based upon the signed authorization cards it

held at the time of its bargaining demand on December 6th. The authorization cards bear the following heading in large, bold face, type:

## 'I WANT AN NLRB ELECTION NOW! 'AUTHORIZATION FOR REPRESENTATION

———◆———

Immediately below, and in smaller type, appears the following:

'I authorize the International Brotherhood of Electrical Workers to represent me in collective bargaining with my employer.' The remainder of the card asks for the employee's name, address, phone, employer, department, shift, classification, date and signature. Union Representative George Schultz, the chief organizer, stated that at the union meetings and at most of his house calls, he explained the purpose of the authorization card as follows: *'To get an NLRB election':* also, it designated that the employee, it demonstrated the employee was designating the IBEW as their bargaining agent.' At no time after signing did any of the employees whose cards are in evidence attempt to revoke their cards." (Emphasis added.)

Thus, the fact is that the election was held, based upon the request that was made manifest by the signing of these cards which were headed "I WANT AN NLRB ELECTION NOW!" The election was lost, whereupon the Union filed a refusal to bargain charge, alleging that at the time of its demand for recognition, it had represented a majority of the employees by reason of the signing of the cards.

■■ There is no doubt about the law requiring an employer "to bargain collectively with the representatives of his employees, subject to the provisions of 9(a)." Section 8(a) (5) of the Act. Nor is there any question about the fact that majority status may be shown by other means than the holding of an election. See United Mine Workers of America v. Arkansas Oak Flooring Company, 351 U.S. 62, 71–72, 76 S.Ct. 559, 100 L. Ed. 941. Here, the conclusion of the Board that majority status was dem-

onstrated regardless of the outcome of the election is based upon the fact that a majority of the employees of the appropriate unit had signed the cards that are above described. The difficulty with this position is that this court has repeatedly held that an ambiguous card, which, when signed, could be taken either as a request for representation or a request for an election, or, possibly for both, is not, standing alone, sufficient to justify a finding that the union held a majority status.

In N. L. R. B. v. Peterson Brothers, Inc., 5 Cir., 342 F.2d 221, the question arose in the following manner: The union requested recognition from the employer at a time that the union had in its possession cards signed by a majority of its employees. These cards were headed "Authorization for Representation," and contained the following language immediately above the signature form: "I, the undersigned employee * * * hereby select the above named union as my collective bargaining agent." There then followed spaces for information, and then the following printed legend at the bottom of the card: "This is not an application for membership. This card is for use in support of the demand of this union for recognition from the company in your behalf, *or for an N.L.R.B. election."* (Emphasis added.)

Upon the filing of unfair labor charges by the union, based on the refusal of the respondent to recognize its bargaining status without an election, the Board found that of the 30 cards held by the charging union, 29 were to be considered as designations of the union as the employees' bargaining representative and that this constituted three more than the majority required to compel recog-

nition. Upon the hearing the examiner found 26, or a bare majority, of the cards to be valid authorizations for union representation. The Board found 29 to be valid. This difference in the findings was based upon evidence given on the trial as to what representations were made to the proposed signers of the cards as to whether they were intended as representation designations or as requests for an election. In that connection, we said, "In view of the language on the face of the card that 'this is not an application for membership,' and the language that in the alternative it is 'for an NLRB election,' we think there was a burden on the general counsel to establish by a preponderance of the evidence that the signer of the card did, in effect, what he would have done by voting for the union in a Board election. We think that in refusing to consider the subjective intent of the signer of the card, in light of the ambiguity on the face of the card, the Board erred. * * It would be very simple for the union to prepare a card that in an unambiguous form would authorize union representation as a bargaining agent. If the union also wished to have cards signed to call an election, this would also be a very simple matter. There can be little excuse for combining the two in a card that makes possible the misrepresentation that the Board found to have existed in the case of McElveen and the misunderstanding that the examiner found as to three other employees and which we now find as to four employees. * * " See also Engineers and Fabricators, Inc. v. NLRB, 5 Cir., 376 F.2d 482, where we found that even though there was no patent ambiguity on the face of the card that was signed, signing of the cards by a majority of the employees could not be considered as a majority request for representation, when the evidence showed that the signatures to many of the cards were obtained by a representation that they were really for the purpose of having an election held. See also the latest case from our court, NLRB v. Southland Paint Co., Inc., May 8, 1968, 5 Cir., 394 F.2d 717.

■ Here the ambiguity was much more patent than it was in the *Peterson* case. Therefore, the acceptance of these cards, which an employee would sign either because he wanted an election or because he wanted to be represented in bargaining sessions without an election, without it being plainly indicated which represented his true intent, violates the principle announced by us in the *Peterson* case.

There being no basis for finding a refusal to bargain other than the Board's reliance upon the signing of the cards, the order of the Board requiring bargaining with the union cannot be enforced. The other matters about which the Board made findings, which would be of significance if we were to support the Board's holding that there was a duty to bargain, need not be discussed in view of this determination that such a holding by the Board was not supported on the record.

That part of the determination of the Board and that part of the order directing bargaining with the IBEW are vacated and set aside. The case is remanded to the Board for preparation of the appropriate order based upon the findings of Section 8(a) (1) violations, other than those arising from the failure to bargain.

The Order is enforced in part and set aside in part.